**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000404
30-JUN-2017
08:29 AM**

NO. CAAP-16-0000404

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
GIANG PHAM, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 15-1-0808)

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, Leonard and Ginoza, JJ.)

Defendant-Appellant Giang Pham (**Pham**) appeals from the April 22, 2016 Judgment of Conviction and Sentence (**Judgment**) entered by the Circuit Court of the First Circuit (**Circuit Court**).[1] After a jury trial, Pham was convicted of one count of Theft in the Second Degree under Hawaii Revised Statutes (**HRS**) § 708-831(1)(b) (2014).[2]

---

[1]   The Honorable Karen S. S. Ahn presided.

[2]   At the time of the alleged offense in this case, HRS § 708-831 stated, in relevant part:

> **§ 708-831 Theft in the second degree.** (1) A person commits the offense of theft in the second degree if the person commits theft:
> . . . .
> (b)   Of property or services the value of which exceeds $300;
> . . . .
> (2)  Theft in the second degree is a class C felony.

I.    BACKGROUND

On May 20, 2015, Plaintiff-Appellee State of Hawai'i (the **State**) filed a Felony Information charging Pham with one count of Theft in the Second Degree under HRS § 708-831(1)(b). The State alleged that on May 17, 2015, Pham concealed or took possession of property of DFS Group L.P. doing business as T Galleria-Waikiki (**T Galleria**), a retail establishment.

The case proceeded to trial on December 10 and 11, 2015. The State called William Bridges (**Bridges**), Marcus Dunlap (**Dunlap**), and Orren Balonso (**Balonso**) as witnesses. Pham called Que Nguyen (**Nguyen**) and Honolulu Police Department (**HPD**) Officer Samuel Menchaca (**Officer Menchaca**) as witnesses.

Bridges testified that he is a Loss Prevention Supervisor for T Galleria, a retail establishment that carries high-end luxury goods. Bridges supervises the investigations that take place at T Galleria and reviews the reports that are submitted as part of the investigations.

Bridges recalled an incident on May 17, 2015, involving Pham. On that day, Bridges was on his way home when he received a call from Balonso. Balonso briefed Bridges about the incident, and Bridges told Balonso "to go ahead and start the process." Bridges testified that, pursuant to his review, three pairs of sunglasses - two Prada sunglasses and one Maui Jims sunglasses - were taken from T Galleria. Bridges testified that on May 17, 2015, Pham did not have permission from T Galleria to take the sunglasses without paying for them.

Dunlap testified that he is a Loss Prevention Officer (**LPO**) at T Galleria and was working on May 17, 2015. His duties were "monitoring the floors, protecting the company from loss." Dunlap first encountered Pham outside of the store. Dunlap identified Pham because LPO "Orren informed us through the radio. He gave us a basic description of the guy." Dunlap testified that Pham had a black satchel type of bag and an ABC store bag. Dunlap and LPO "RJ or Richmond Rasada" approached Pham, presented themselves as LPOs, and escorted Pham to the office. Dunlap testified that "we recovered three sunglasses" from Pham's bags and that no receipt or proof of ownership was recovered.

As part of Dunlap's normal practice, he speaks with police officers and usually gives a verbal statement as to what happened. Dunlap also prepares a written or typed statement that is already prepared by the time police officers arrive.

The State next called Balonso to the stand. Balonso is also an LPO at T Galleria. Balonso was on duty on May 17, 2015. Balonso's assignment was to "pretty much watch the store," which entails "like shoplifting, anybody that comes into our store that causes a problem, respond to it, respond to medical -- any medical attention, like if our customer gets hurt, we respond."

Balonso testified that at about 5:10 p.m., he "was roaming the third floor," he observed Pham "approach the first Prada fixture," and that Pham then "selected the sunglasses, looked at it and then folded the sunglasses and concealed it into his black messenger bag." Balonso further testified: "Then he went over to Maui Jims, the Maui Jims sunglasses and did the same

thing, select, fold the frame and concealed it into his black messenger bag." Balonso testified that he observed Pham go to another Prada fixture, select Prada sunglasses and conceal the sunglasses in his ABC bag.

Balonso testified that on May 17, 2015, there were two registers and a sales associate behind a register in the sunglass boutique. Balonso testified that after Pham concealed the sunglasses in his bags, Pham entered the elevators. Balonso testified that Pham made no attempt to stop by the registers or talk to any of the sales associates. Balonso "notified all the other LPO officers" that Pham "was exiting the third floor using the elevators going down to the lobby."

Balonso testified that after the merchandise was recovered, as part of his investigation before police arrived, he "did my 252,[3] took pictures of the floor, and that's pretty much it and the still photos." Balonso handed over his reports to the police. Balonso testified that he talked to a detective in this case and his statement to the detective was consistent with what he wrote in his HPD 252 form.

On cross-examination, Balonso testified that Officer Menchaca responded to the scene. Balonso met with Officer Menchaca and gave him a verbal statement. Balonso testified that he told Officer Menchaca that he saw Pham pass ten registers.

---

[3] The "252" is a form that HPD uses for witnesses to write statements.

On redirect examination, Balonso testified that he saw Pham pass only two registers. The Deputy Prosecuting Attorney (DPA) further questioned Balonso as follows:

> Q. In your 252 do you recall about what you said about how many registers he had past?
>
> A. Yeah.
>
> Q. You recall what you said? What did you say in your 252?
>
> A. I said approximately 10, maybe 10 registers.
>
> . . . .
>
> Q. (By [the DPA]) So you're saying that as you sit there on the stand you recall that you might have written 10 manned registers in your 255 [sic]?
>
> A. Yes.
>
> . . . .
>
> [The DPA]: Your Honor, let the record reflect that I'm showing to defense counsel a copy of Mr. Balonso's 252. May I approach?
>
> THE COURT: Yes.
>
> (By [the DPA]) Mr. Balonso, this is a copy of your 252. Can you review it, please, and look specifically for how many manned registers you wrote in that 255 [sic]. And [w]hen you are done if you can look up.
>
> [Defense Counsel]: Your Honor, I'm going to object. May we approach?
>
> THE COURT: Yes.
>
> [Defense Counsel]: On the record, please.
>
> (The following proceedings were held at the bench:)
>
> THE COURT: Okay. What's the objection?
>
> [Defense Counsel]: The objection is that this is improper impeachment. It's improper recollection. Your Honor, when the witness was asked what he wrote in his statement he said 10 registers. The State was allowed to ask the question of so if you don't recall do you recall what was in your report. The witness gave a clear answer that he believed it to be ten. Now, I believe the State intends to --
>
> THE COURT: I agree with the refreshing has not been -- foundation has not been laid. So let's move on to prior inconsistent statement. Is there an objection to that?
>
> [Defense Counsel]: If that's how he's offering. But I think there's also -- if that's how he's offering, that is not what he said.

THE COURT: Oh, sorry.

[Defense Counsel]: That's what the report said.

THE COURT: Sorry. Erase that.

[The DPA]: Foundation has been laid for prior inconsistent statement because he's saying on the stand that there was 10 manned registers. But in the 252 --

THE COURT: I'm sorry. Okay, so he said what?

[The DPA]: He said on the stand that he wrote in his 252 that there were 10 manned registers that he saw the defendant pass.

[Defense Counsel]: He was impeached on that.

[The DPA]: That's correct. And I'm laying foundation 'cause he wrote it. He was specific when he wrote it. He signed it at the bottom.

THE COURT: What is your objection?

[Defense Counsel]: My only objection was because he was allowed to ask questions about recall. So then I thought we were refreshing.

THE COURT: I sustained that objection. But you didn't have prior inconsistent.

[Defense Counsel]: Prior inconsistent statement, no objection.

THE COURT: Okay. It's received.

(Bench conference concluded.)

[Defense Counsel]: Actually, Your Honor, I'm sorry, can we approach again?

(The following proceedings were held at the bench:)

[Defense Counsel]: So when the -- proper foundation that it's prior inconsistent statement.

THE COURT: Are you objecting to foundation?

[Defense Counsel]: I think he might have laid most of the foundation because I was paying attention to refreshing recollection and not impeachment.

THE COURT: Okay, you're on notice.

[The DPA]: Yeah, it's for inconsistent statement. It's inconsistent.

[Defense Counsel]: Okay, all right.

THE COURT: Okay.

[Defense Counsel]: Thank you.

THE COURT: Okay.

(Bench conference concluded.)

Q. (By [the DPA]) Mr. Balonso, have you had time to review your 252 that you submitted to Officer Menchaca?

A. Did I have time? Hold on.

Q. Now, what you wrote in there or that he past two manned registers?

A. Yes.

. . . .

Q. (By [the DPA]) But you had just testified that in your 252 you wrote that he had past 10 manned registers; right?

A. Yes.

Q. Did he pass 10 manned registers?

A. No.

Q. How many registers did he pass?

A. Two.

After Balonso's testimony, the State rested. The defense first called Nguyen to the stand. Nguyen had known Pham for more than ten years. Nguyen and Pham are close friends and Pham sometimes visited Nguyen at Nguyen's work. Defense moved into evidence photographs of Pham wearing sunglasses. Nguyen testified that he saw Pham wear sunglasses one time when Pham visited Nguyen's work, but Nguyen did not remember if those were the exact same sunglasses as the ones in the defense exhibits.

The defense next called Officer Menchaca to the stand. On May 17, 2015, Officer Menchaca was working for HPD in the Waikiki district and was dispatched to a theft case at T Galleria. As part of his training as a police officer, Officer Menchaca was trained to gather all evidence, including both exculpatory and inculpatory evidence.

Officer Menchaca conducted an investigation, which consisted of "speaking with the Loss Prevention Officers, getting

their written statements as well as verbal statements, and just finding out what happened." Regarding the written statements, Dunlap and Balonso gave Officer Menchaca a 252 Form. Officer Menchaca testified that the written statements were prepared prior to his arrival. Officer Menchaca reviewed Balonso's written statement before Officer Menchaca submitted his report.

Officer Menchaca spoke with Balonso and Dunlap. Officer Menchaca testified that he wrote in his report what Balonso told Officer Menchaca in Balonso's verbal statement. Officer Menchaca testified that Balonso told Officer Menchaca that Balonso saw Pham walk past ten manned registers. Officer Menchaca testified that Dunlap also told Officer Menchaca that Dunlap saw Pham walk past ten manned registers.

On cross-examination, Officer Menchaca testified that he signed at the bottom of Balonso's and Dunlap's written statements to acknowledge that Officer Menchaca received their written statements. Officer Menchaca testified that in preparing his report, he relied on the HPD 252 forms prepared by Balonso and Dunlap. Officer Menchaca testified that Balonso verbally communicated to him that Balonso saw Pham walk past ten registers. Officer Menchaca testified that in Balonso's HPD 252 form, Balonso wrote that Pham walked past two registers.

On redirect examination, Officer Menchaca testified that his report consists of "where I get sent, what type of case it was, what happened there also, the statements provided by the Loss Prevention Officers, also suspect's name, information, transport, that's usually how the report goes." Officer Menchaca

testified that his report is based on both written and verbal statements from witnesses. Officer Menchaca testified that in his experience, sometimes the police reports differ from the written statements obtained from witnesses.

Officer Menchaca testified that when he reviewed the written statements as part of the investigation, he was looking for information such as "item that was selected, concealment, constant surveillance, existed the -- walk pass the manned registers, and how far he was stopped outside the store," and also looking at the specific details of how many registers that a person passes. Defense counsel further questioned the officer:

> [Defense Counsel]: Do you, you know, when you see something in a written witness's statement that differs from your recollection, how do you document it in your report, do you change it to match what you've read in a witness's statement?
>
> A. From what they tell me.
>
> Q. Okay. So even if their written statement might say something different from what you've heard, you write down what you heard?
>
> A. Yes.
>
> Q. And what you remember?
>
> A. Yes.
>
> Q. And is that part of your training as a police officer?
>
> A. Yes.
>
> Q. That you have to write reports accurately?
>
> A. Yes.
>
> [Defense Counsel]: I have nothing further, Officer Menchaca. Thank you.

The DPA's recross examination of Officer Menchaca, in its entirety, was as follows:

BY [DPA]:

Q. Officer Menchaca, you just testified that when there's a difference in the verbal statements and the written reports, you document it in your report?

A. When there's a difference?

Q. When there's a difference. If there's a discrepancy, you would have documented it in your report; correct?

A. Yes.

[DPA]: May I approach, Your Honor?

THE COURT: Yes.

Q. (By [DPA]) Officer Menchaca, I'm showing you your report. Can you review your report and indicate to me where you included the discrepancies between the verbal statements and the written statements that were provided to you from LPO Balonso and LPO Dunlap?

A. No, not included.

Q. So notwithstanding there being a discrepancy, you never noted that in your report?

A. Yes.

[DPA]: No further questions, Your Honor.

The Circuit Court then excused the witness. Defense counsel stated she wanted to further question the witness:

[Defense Counsel]: I'm sorry, Your Honor, I have further redirect --

THE COURT: We're done.

[Defense Counsel]: -- based on that.

. . . .

[Defense Counsel]: Your Honor, I need to place something on the record.

(Jury excused.)

. . . .

[Defense Counsel]: I had requested to ask additional redirect questions of Mr. -- Officer Menchaca and the Court did not permit me to do that. Had I been able to question Officer Menchaca, I would have asked him about the fact underneath each section where he indicates a written statement, he says refer to the 252, which would have been a way to explain to the jury that it is documented that there is another statement, whether it's inconsistent with his statement or not. And he does document it in his report, which was something raised by the State in recross.

And although the Court prevented me from asking those questions, that's an important fact for the jury. I'd ask Officer Menchaca to remain in the event that the Court will allow me to recall him, otherwise I'm going to be making a copy of page 5 of his 7-page report and asking that that be submitted as Defendant's Exhibit A with respect to this particular objection.

THE COURT: Your question was whether he tried to consolidate the two statements? What was your question, how did you phrase it?

[DPA]: The question was whether or not he documented the discrepancies between the verbal statements and the 252s that were given to him and if he could show that to me in the report. His response was negative, he couldn't show me in the report.

So the State would be arguing that simple references to the HPD 252 is beyond the scope because the only issue is discrepancies being notified or documented in the report.

[Defense Counsel]: First of all, the questions that were asked to him was whether or not he did document in his -- does he document when there's a discrepancy. And the way he documents it is by saying, refer to this thing. Don't just rely on my own verbal statement.

THE COURT: Well, that's your take on it. It's a general statement, please refer to.

[Defense Counsel]: But I wasn't even allowed to ask that question.

THE COURT: All right.

[Defense Counsel]: So I'm asking the Court to --

THE COURT: No.

[Defense Counsel]: Can I just make my record?

THE COURT: Yes.

[Defense Counsel]: I know the Court disagrees with me, but can I make my record?

THE COURT: Well, we have been going forever in this case. Questions are being asked over and over and over again, okay. And then some of them are argumentative. Now, there's been no objection on either side. But, my goodness, we are just -- I mean, we have taken a lot more time for this witness or any other witness that we could have -- it could have been done in such a shorter more consolidated efficient manner.

All right, anything more you want to put on the record?

[Defense Counsel]: The only thing that I want to place on the record is my request to ask the Court to allow me to have officer Menchaca called when we reconvene so I can ask him the sole question of when he documents in his report a verbal statement, does he also indicate to refer to the HPD 252, which was done in this case.

THE COURT: Okay. But all it is is please refer to and there's no specifics other than that; is that right?

[Defense Counsel]: Well, he would probably also say that he also submits the 252 as part of his report.

THE COURT: Well, he would probably say that, is that what, I don't know. I think its been brought out that he makes 252 part of the record.

[Defense Counsel]: I don't think he --

THE COURT: You never asked him that in all your questions?

[Defense Counsel]: Well, he raised it on recross, Judge.

THE COURT: No, this is a subject that we've gone over a number of times from different directions.

[Defense Counsel]: He crossed about the 252, whether or not he reviewed it. But he didn't -- he didn't cross about whether or not it was attached to the report. And that wasn't relevant for me to ask those questions until he asked his recross.

THE COURT: My impression is that he said he collects the 252s. He takes verbal statements and he writes his report, okay. If he writes his report, collects 252s and throws the 252s in the rubbish can, does that make a lot of sense? What is the reasonable inference? Unless you want to allow that kind of argument, that's silly, right?

[Defense Counsel]: No, I agree with the Court on that.

THE COURT: Okay.

[Defense Counsel]: So the Court's overruling my request?

THE COURT: Yes. I think the jury has more than enough information to decide this case.

The defense then rested its case. The jury returned a verdict of guilty as charged. On April 22, 2016, the Circuit Court entered its Judgment. Pham was convicted of Theft in the Second Degree and sentenced to five years of incarceration, to run consecutively to any other sentences Pham may have been subject to. On May 17, 2016, Pham filed his Notice of Appeal.

II.  POINTS OF ERROR

On appeal, Pham raises two points of error, contending that the Circuit Court plainly erred when it:  (1) allowed extrinsic evidence of a prior inconsistent statement of Balonso;

and (2) prevented defense counsel from further examination of Officer Menchaca regarding Balonso's inconsistent statements.

III. APPLICABLE STANDARDS OF REVIEW

"A trial court's evidentiary rulings pursuant to HRE Rule[] 613(b) [is] reviewed on appeal pursuant to the *de novo* or right/wrong standard." State v. Holt, 116 Hawai'i 403, 414, 173 P.3d 550, 561 (App. 2007) (citing State v. Ortiz, 91 Hawai'i 181, 189-90, 981 P.2d 1127, 1135-36 (1999)).

"Matters regarding the examination of witnesses are within the discretion of the trial court[.]" The Nature Conservancy v. Nakila, 4 Haw. App. 584, 596, 671 P.2d 1025, 1034 (1983) (citations omitted).

> Under this standard, we will not disturb the trial court's exercise of its discretion unless it is clearly abused. An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party-litigant.

State v. Jackson, 81 Hawai'i 39, 47, 912 P.2d 71, 79 (1996) (citations and quotation marks omitted).

IV. DISCUSSION

A. Extrinsic Evidence of Balonso's Prior Inconsistent Statement under HRE Rule 613(b)

Pham contends that the Circuit Court erred when it allowed extrinsic evidence of the prior inconsistent statement of Balonso, in violation of HRE Rule 613(b)(2), because the DPA never asked Balonso whether he made the prior statement before introducing it. The State submits that this alleged error was not preserved below, and thus should be deemed waived. The State alternatively contends, *inter alia*, that the extrinsic evidence was never admitted.

HRE Rule 613(b) states:

> (b)  Extrinsic evidence of prior inconsistent statement of witness.  Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless, on direct or cross-examination, (1) the circumstances of the statement have been brought to the attention of the witness, and (2) the witness has been asked whether the witness made the statement.

"Normally, an issue not preserved at trial is deemed to be waived."  State v. Miyazaki, 64 Haw. 611, 616, 645 P.2d 1340, 1344 (1982).  "But where plain errors were committed and substantial rights were affected thereby, the errors 'may be noticed although they were not brought to the attention of the [trial] court.'"  State v. Fox, 70 Haw. 46, 55, 760 P.2d 670, 675 (1988) (quoting Hawai'i Rules of Penal Procedure Rule 52(b)).

With regard to evidentiary objections, "[w]here specific grounds are stated in an objection, the implication is that there are no others or, if there are others, that they are waived."  State v. Matias, 57 Haw. 96, 101, 550 P.2d 900, 904 (1976) (citation and quotation marks omitted).  "Waiver also occurs when an overruled trial objection is abandoned and a different argument for exclusion is presented on appeal."  A. Addison M. Bowman, Hawaii Rules of Evidence Manual 1-6 (3rd ed. 2006).

At trial, the DPA sought to have Balonso review his HPD 252 form.  Defense counsel objected.  Defense counsel stated that the objection "is improper impeachment.  It's improper recollection."  After some discussion, the Circuit Court again asked defense counsel what the objection was.  Defense counsel responded, "[m]y only objection was because he was allowed to ask questions about recall.  So then I thought we were refreshing."

The Circuit Court stated, "I sustained that objection. But you didn't have prior inconsistent." Defense counsel responded, "[p]rior inconsistent statement, no objection." At a subsequent bench conference, the Circuit Court asked defense counsel if she was objecting to lack of foundation of prior inconsistent statement. Defense counsel replied, "I think he might have laid most of the foundation because I was paying attention to refreshing recollection and not impeachment." The DPA clarified, "[y]eah, it's for inconsistent statement. It's inconsistent." Defense counsel responded, "[o]kay, all right."

Defense counsel at trial explicitly stated that there was no objection on the grounds of improper prior inconsistent statement. Defense counsel also explicitly waived the contention made here on appeal - that the DPA did not lay foundation for prior inconsistent statement. Though Pham contends the Circuit Court plainly erred, Pham makes no argument on how this alleged error affected his substantial rights. We conclude that Pham waived this issue.

Even if the issue was not waived, Tham fails to show that the State violated Rule 613(b). To lay the foundation for the admission of extrinsic evidence of a prior inconsistent statement under Rule 613(b), the State was required to (1) bring the circumstances of the prior inconsistent statement to the attention of the witness and (2) ask the witness whether he or she made the statement. Here, even though it may not have been permissible to show Balonso his HPD 252 statement to refresh his recollection, it was permissible to show Balonso his HPD 252

statement and ask him whether he wrote that Tham had passed two registers in order to lay a proper foundation pursuant to Rule 613(b). Because Balonso admitted that he wrote in his HPD 252 statement that Tham had passed two registers, there was no need to offer any further extrinsic evidence to prove the inconsistent statement. Contrary to Tham's contention, the State's actions were consistent with, and did not violate, Rule 613(b).

Thus, we conclude that Tham's contention is without merit.

B. Defense Counsel's Attempted Further Redirect of Officer Menchaca Regarding His Report

Pham contends that the Circuit Court erred when it prevented defense counsel from further redirect examination of Officer Menchaca because "defense counsel would have elicited from Officer Menchaca that he does document the discrepancy by referring to Balonso's 252." The State contends that defense counsel's desire to further question Officer Menchaca was unnecessary in light of the existing testimony and therefore the Circuit Court did not abuse its discretion.

HRE Rule 611(a) states:

> **Rule 611 Mode and order of interogation and presentation.** (a) Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Pursuant to HRE 611(a), "redirect is properly limited to the development, correction and refutation of matters brought out for the first time on cross." Jackson, 81 Hawai'i at 47, 912

P.2d at 79 (quoting A. Bowman, Hawaii Rules of Evidence Manual 250 (1990)) (brackets omitted).

Pham's trial counsel sought to ask Officer Menchaca on a second redirect examination if Officer Menchaca says in his report to refer to the HPD 252 form, and defense counsel argued to the Circuit Court that this question was necessary "to explain to the jury that it is documented that there is another statement." However, as the Circuit Court noted, ample testimony was already elicited to that effect. Officer Menchaca was trained to gather all evidence. Officer Menchaca testified that his investigation consisted of getting both the written and verbal statements of the LPOs. Officer Menchaca testified that his report includes the statements provided by the LPOs, and that his report is based on both the written and verbal statements of the witnesses.

Officer Menchaca testified that Balonso gave his HPD 252 form to Officer Menchaca. Officer Menchaca testified that he reviewed Balonso's written statement before Officer Menchaca submitted his report. Officer Menchaca testified that in preparing his report, he relied on Balonso's and Dunlap's HPD 252 forms. Defense counsel questioned Officer Menchaca during redirect examination regarding the relationship between his report and the witnesses' written statements:

> [Defense Counsel]. So would it be fair to say that your report contains information from the written statements of any witnesses and other information?
>
> A. Yes, it does.

Q. And did you deviate from your general practice in preparing the report in this case?

A. No.

Officer Menchaca testified that Balonso wrote in his HPD 252 form that he saw Pham walk past two manned registers and that Balonso gave him a verbal statement in which Balonso stated that he saw Pham walk past ten registers. Officer Menchaca testified that in his experience, sometimes the police reports differ from the witnesses' written statements.

Moreover, defense counsel had already questioned Officer Menchaca about writing his report after noticing discrepancies in a witness's statements:

> [Defense Counsel]: Do you, you know, when you see something in a written witness's statement that differs from your recollection, how do you document it in your report, do you change it to match what you've read in a witness's statement?
>
> A. From what they tell me.
>
> Q. Okay. So even if their written statement might say something different from what you've heard, you write down what you heard?
>
> A. Yes.
>
> Q. And what you remember?
>
> A. Yes.
>
> Q. And is that part of your training as a police officer?
>
> A. Yes.
>
> Q. That you have to write reports accurately?
>
> A. Yes.
>
> [Defense Counsel]: I have nothing further, Officer Menchaca. Thank you.

At the time the Circuit Court prevented further questioning, Office Menchaca had already been subject to direct examination, cross examination, redirect examination, and recross examination. The Circuit Court explained why preventing further

questioning would avoid needless consumption of time: "If he writes his report, collects 252s and throws the 252s in the rubbish can, does that make a lot of sense? What is the reasonable inference? Unless you want to allow that kind of argument, that's silly, right?" Defense counsel conceded, "[n]o, I agree with the Court on that."

Accordingly, we conclude that the Circuit Court did not abuse its discretion in denying re-cross.

V.   CONCLUSION

Based on the foregoing, we affirm the Circuit Court's April 22, 2016 Judgment.

DATED: Honolulu, Hawai'i, June 30, 2017.

On the briefs:

Brandon K. Flores,
for Defendant-Appellant.

Donn Fudo,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge